IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00087-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  TIMOTHY HUMMEL,

    Defendant.

---

**PLEA AGREEMENT**

---

The United States of America, by and through Julia Martinez, Assistant United States Attorney, and defendant, TIMOTHY HUMMEL, personally and through counsel, David Johnson, Assistant Federal Public Defender, submit the following Plea Agreement.

### I.  **PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties understand that any recommendations that a particular sentence or sentencing range be imposed pursuant to this Plea Agreement is not binding on the court.

A.  **Defendant's Obligations**

    1.  **Count of Conviction**

The defendant agrees to plead guilty to Count Two of the Indictment charging a violation of 18 U.S.C. § 115(a)(1)(B) – Threatening to Murder Federal Law Enforcement Officers.

Court Exhibit 1

2. **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of **12**; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement.

B. **Government's Obligations**

1. **Dismissal of Additional Charges**

If the defendant enters an unconditional plea of guilty to Count Two of the Indictment and otherwise fulfills all obligations outlined above, the government will dismiss Counts One, Three, and Four of the Indictment and agrees not to charge the defendant with any other violations of law now known to the United States Attorney's Office for the District of Colorado.

2. **Sentencing Position**

Provided that the guideline range is calculated consistent with the estimated range contained in this agreement, the government also agrees to seek a variance and to recommend a sentence of probation.

3. **Acceptance of Responsibility**

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 2-point reduction in the offense level for acceptance of responsibility, pursuant to § 3E1.1, is appropriate.

C. **Effect of Withdrawal from Plea Agreement**

The parties stipulate and agree that the government may unilaterally withdraw from this Plea Agreement under any of the following circumstances: 1) if the defendant does not plead guilty to Count Two of the Indictment; 2) if the Court does not accept the defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the district court or on direct or collateral appeal; 4) if the defendant, at any time after judgment is entered, obtains dismissal, reversal or remand of the count(s) of conviction for any reason; or 5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered, the crime of Threatening to Murder Federal Law Enforcement Officers, 18 U.S.C. § 115(a)(1)(B), are as follows:

*One*:  Defendant threatened to murder a Federal law enforcement officer; and

*Two*:  Defendant acted with intent to impede, intimidate, or interfere with such law enforcement officer while he or she was engaged in the performance of official duties, or with the intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties.

## III.  STATUTORY PENALTIES

The statutory penalty for a violation of 18 U.S.C. § 115(a)(1)(B) is not more than 10 years imprisonment, not more than a $250,000 fine, or both, not more than three years of supervised release, and a $100 special assessment fee.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury.  If the defendant is not a United States citizen, this conviction will result in the defendant's removal from the United States once he has completed any sentence of imprisonment.

A.  **Future Violations of Supervised Release**

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision.  If a condition of release is violated, the defendant may be sentenced to up to 3 years without credit for pre-release

imprisonment or time previously served on post-release supervision.

## V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to this Plea Agreement. That basis is set forth below.  Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense(s) of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations.  To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the Plea Agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein, which do not contradict the facts to which the parties have stipulated, and which are relevant to the guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4, 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision.  In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information."  § 6B1.4 Comm.

The parties stipulate to the following facts:

The Department of Homeland Security's U.S. Immigration and Customs Enforcement (ICE) is the federal agency responsible for enforcing U.S. immigration laws.  Enforcement and Removal Operations (ERO) is the directorate within ICE focused on arrests and removals.  ICE employs agents who are authorized to engage in the prevention, detection, investigation, or

prosecution of federal criminal laws.

On August 14, 2019, the defendant, TIMOTHY HUMMEL, repeatedly called the ERO Denver Field Office, located in Centennial, Colorado.  HUMMEL left two voicemails a few minutes apart.  In the first voicemail, HUMMEL stated:

> I swear to fucking god you stupid pieces of shit.  If I see one of your agents on my street, I will find out who they are and personally fund the assassination of their fucking families.

In his second voicemail, HUMMEL stated:

> I hope all y'all love some fire because I swear to fucking God that I will burn down every single last one of your fucking camps, every single last one of your headquarters, every single office and murder every single agent that I can possibly get my hands on before you guys take me down. I fuckin' hope you love fire 'cause you got it coming to you, you assholes.

Shortly after leaving the two voicemails, HUMMEL sent the following email to the Denver ERO Outreach mailbox:

> From: Timothy Hummel (hummel.timothy94@gmail.com)
> Sent: Wednesday, August 14, 2019 7:17 PM
> To: Denver.Outreach
> Subject:
> You better have some mighty fine security for your agents in the field
> because the fire's coming your way. Every agent we find will be targeted.
> Every family member. Every wife or husband, every child, every aunt and
> uncle will be a target, every grandmother will be a target. We have a
> multitude of individuals ready to sacrifice what needs be to be rid of
> every last one of you we can possibly find. If you are seen on any one of
> our streets, beware. The fire is coming and you can stop it. Shoot us of
> you will, detain as much as you want. There will always be more of us.
> And less of you.

ICE/ERO reported the threats to both the Federal Bureau of Investigation (FBI) and Federal Protective Services (FPS).  FPS put out a bulletin containing HUMMEL's photo and

identifiers to all ICE/ERO offices in Colorado in order to alert the offices should they encounter HUMMEL.

On January 14, 2020, FBI agents investigating the above threats contacted HUMMEL at his place of employment and asked if he would consent to an interview at the Colorado Springs Police Department. HUMMEL came to the location of his own volition and was told numerous times that he was free to leave. He was cooperative. During the interview, HUMMEL admitted to making the voicemail and email threats. HUMMEL stated that he was angry at ICE and that he made the threats to scare ICE agents and because he wanted ICE agents to use their resources reacting to the threats instead of doing their jobs. He described the communications as a sort of coping mechanism when he was upset or having a bad day. HUMMEL further stated that he never intended to carry out any of his threats. During the interview, HUMMEL accepted full responsibility for his conduct, stating he regretted his behavior and was apologetic.

The FBI's investigation ultimately uncovered no evidence that HUMMEL took any steps or preparation towards committing any act of violence.

## VI.  ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate.  The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range.  To that end, the government may make legal or factual arguments that affect the estimate below.

**Offense Level**:  Under § 2A6.1, the base offense level for this offense is **12.** § 2A6.1(a)(1).

A. Because the defendant made more than two threats, there is an increase of **+2** levels.  § 2G2.2(b)(2).

B. No victim-related, role-in-offense, obstruction and/or multiple count adjustments apply.  The parties agree that the Official Victim adjustment, § 3A1.2, does not apply because the defendant's threats did not specify individual victims.

C. Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility.  § 3E1.1(a).

D. The adjusted offense level is **12**.

**Criminal History Category**

E. The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative.  Defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court.  Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment.  Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") **I**.  § 4A1.1.

**Guideline Ranges**

F. The guideline range resulting from the estimated offense level of 12 and the estimated criminal history category of I is **10** to **16** months' imprisonment.  However, the imprisonment range could be from 10 months (bottom of CHC I) to 37 months (top of CHC VI).

G. Pursuant to § 5E1.2, assuming the estimated offense level of 12, the fine range for this offense would be $5,500 to $55,000, plus applicable interest and penalties.

H.  Pursuant to § 5D1.2, the term of supervised release shall be not more than three years.

## VII.  **ENTIRE AGREEMENT**

This document states the parties' entire agreement.  There are no other promises, agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or implied.  In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date:   08/05/2020            *Timothy R. Hummel*
                              TIMOTHY HUMMEL
                              Defendant

Date:   08/05/2020            *David E. Johnson*
                              David Johnson
                              Attorney for Defendant

Date:                         *Julia Martinez*
                              Julia Martinez
                              Assistant U.S. Attorney

9